**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 13-165-DLB**

**ZOLA HIBBARD**                                                                        **PLAINTIFF**

vs.                     **<u>MEMORANDUM OPINION AND ORDER</u>**

**CAROLYN W. COLVIN, Acting**                                    **DEFENDANT**
**Commissioner of Social Security**

*****************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Zola Hibbard filed her current applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) payments, alleging disability as of April 21, 2009. (Tr. 176-82). Plaintiff's claim was denied initially and on reconsideration. (Tr. 100-07). At Plaintiff's request, Administrative Law Judge Andrew J. Chwalibog conducted an administrative hearing on October 18, 2011. (Tr. 111-12 and 120). After the hearing, ALJ Chwalibog sent a request for medical interrogatories to Dr. Ronald E. Kendrick, who responded about two weeks later. (Tr. 686-702). On March 20, 2012, a supplemental hearing took place, again at Plaintiff's request. (Tr. 27-37). ALJ Chwalibog ruled that

1

Plaintiff was not entitled to benefits on April 23, 2012. (Tr. 7-26). This decision became the final decision of the Commissioner when the Appeals Council denied review on July 1, 2013. (Tr. 1-4).

On August 30, 2013, Plaintiff filed the instant action. (Doc. # 2). The matter has culminated in cross motions for summary judgment, which are now ripe for review. (Docs. # 11 and 12).

## II.  DISCUSSION

### A.  Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Secretary of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national

economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 12). At Step 2, the ALJ found Plaintiff's back pain (secondary to herniated and bulging discs in her neck and back), obesity and osteoarthritis to be severe impairments within the meaning of the regulations. (*Id.*).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in, 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 14). In doing so, the ALJ found that claimant's osteoarthritis and back pain do not meet the requirements of Listing 1.02 (major dysfunction of a joint) or 1.04 (disorders of the spine) because "the examining and treating physician's reports show the claimant does not have [] ambulatory deficits" and "there is no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." (*Id.*). The ALJ considered the claimant's obesity, as well as the combined effect of her impairments, but ultimately concluded that "while the claimant's obesity may increase the severity of coexisting and related impairments, the evidence does not establish presumptive disability." (*Id.*)

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work activity, as defined in 20 CFR 404.1567(b) and 416.967(b), except

3

that:

> [the claimant] can occasionally lift 20 pounds and frequently lift 10 pounds; can sit six hours out of an eight hour day, one hour without interruption; can stand or walk for four hours out of an eight hour day, 30 minutes without interruption; only occasionally reach overhead; may frequently reach and push and pull with the upper extremities; may frequently operate foot controls; may never climb a ladder or scaffolds; may only occasionally climb a ramp or stairs, balance, stoop, kneel, crouch or crawl; must avoid all exposure to vibration and unprotected heights; may have occasional exposure to moving mechanical parts; operating a motor vehicle and extreme cold; may have frequent exposure to humidity, wetness, dust, odors, fumes and pulmonary irritants as well as heat.

(Tr. 15). Based upon this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform any past relevant work. (Tr. 19).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 20). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (*Id.*). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could find work at the light level of exertion as a routing clerk (3,000 jobs regionally/78,000 nationally) or machine tender (2,500 jobs regionally/100,000 nationally). (*Id.*). The VE further opined that Plaintiff could find work at the sedentary level of exertion as a grader/sorter (3,000 jobs regionally/72,000 nationally) or bench worker (6,000 regionally/169,000 nationally). (*Id.*). Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that he was not under a "disability," as defined by the Social

4

Security Act. (Tr. 21).

**C.   Analysis**

Plaintiff advances two arguments on appeal. (Doc. # 11). First, Plaintiff argues that the ALJ erred in failing to provide her with copies of medical expert interrogatories in accordance with the Hearings, Appeals and Litigation Law Manual. Second, Plaintiff asserts that the ALJ made impermissible independent medical findings without consulting the medical expert. Each of these arguments will be addressed in turn.

> **1.   The ALJ erred in failing to provide Plaintiff with copies of medical expert interrogatories.**

The Sixth Circuit has held that Due Process does not give social security disability claimants an absolute right to subpoena physicians providing post-hearing evidence. *See Flatford v. Chater*, 93 F.3d 1296, 1306-07 (6th Cir. 1996). The claimant need only "have the opportunity to cross-examine a reporting physician where reasonably necessary to a full development of the evidence in the case." *Id.* Due to the non-adversarial nature of social security cases, interrogatories may often "provide a meaningful opportunity for a disability claimant to confront evidence he believes to be adverse to his claim." *Id.* at 1306.

The Hearings, Appeals and Litigation Law Manual (hereinafter "HALLEX"), which ALJs use as a procedural and administrative guide, provides that such interrogatories may be sent at the ALJ's own initiative or at the claimant's request. *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008); HALLEX I-2-5-42. Although most often used when the ALJ receives post-hearing evidence, written interrogatories may be used at other stages of the hearing process. *Id.* Once the medical expert responds to the written interrogatories, copies of the response should be included in the record as exhibits and

sent to the claimant and representative, who may then request a supplemental hearing. *Id.*

HALLEX is a useful reference for adjudicators, but its provisions are not binding on courts. *See Bowie*, 539 F.3d at 397. "The fact that something is or isn't mentioned in HALLEX is not a basis for disturbing the Commissioner's decision." *Morris v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008). However, if a claimant wishes to object to the form of the interrogatories or the procedures used to obtain them, he or she must do so at the supplemental hearing. *See Gibbs v. Comm'r of Soc. Sec.*, No. 12-cv-14643, 2013 WL 5423612 at *13 (E.D.M.I. Sept. 26, 2013). Otherwise, subsequent objections on these grounds may be treated as waived. *See Gibbs*, 2013 WL 5423612 at * 13 (dismissing Plaintiff's argument that the written interrogatories did not comply with HALLEX because Plaintiff's counsel earlier indicated that he had no objections to the evidence submitted); *Rudolph v. Comm'r of Soc. Sec.*, No. 12-11308, 2013 WL 5204513 at *8-9 (E.D.M.I. Sept. 16, 2013) (rejecting Plaintiff's complaint that she did not receive copies of written interrogatories because Plaintiff's counsel did not object to the receipt of the medical expert's opinion into evidence at the hearing).

Although not explicitly stated in these terms, the crux of Plaintiff's argument seems to be that procedural non-compliance resulted in a more egregious Due Process violation. Plaintiff maintains that Dr. Kendrick's response to the written interrogatories was filed in the record as an exhibit, but a copy was not sent directly to her and her representative. Without this copy, she was unable to effectively cross-examine Dr. Kendrick by sending her own written interrogatories to him in advance of the supplemental hearing. Plaintiff believes that remand is appropriate so she may have the opportunity to establish an alternative

6

theory of disability.

Contrary to Plaintiff's current assertion, the record suggests that Plaintiff did receive a copy of Dr. Kendrick's response. At the supplemental hearing, Plaintiff's representative indicated that he had reviewed the updated file, which included the medical interrogatories and responses. (Tr. 29). Plaintiff's representative further stated that he had no objections to the new exhibits before ALJ Chwalibog admitted them into the record. (Tr. 29-30). If Plaintiff reviewed the updated exhibits, then she could have either sent her own written interrogatories to Dr. Kendrick or subpoenaed him to testify at the supplemental hearing. It seems that she declined to do so.

Assuming *arguendo* that Plaintiff did not receive her copy, the supplemental hearing, held at Plaintiff's request, remains a full and fair proceeding. Before admitting the new exhibits into the record, ALJ Chwalibog asked Plaintiff whether she had reviewed the exhibits and whether she had any objections to them. (Tr. 29-30). This dialogue gave Plaintiff's representative ample opportunity to object to the admission of Dr. Kendrick's response and point out that Plaintiff did not receive a copy. By remaining silent, he effectively waived Plaintiff's current argument. The potential failings of Plaintiff and her representative notwithstanding, the Court finds that the hearing comported with Due Process.

**2.    The ALJ made impermissible independent medical findings without consulting the medical expert**

An ALJ is "not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and draw his own inferences." *Simpson v. Com'r*, 344 Fed. Appx. 181, 194 (6th Cir. 2009) (internal citations omitted). In weighing these opinions, the ALJ is

7

required to consider their quality and, thus, "should consider the qualifications of the experts, the opinions' reasoning, their reliance on objectively determinable symptoms and established science, their detail of analysis and their freedom from irrelevant distractions and prejudices."  *Id.*  However, the ALJ "may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence."  *Id.* (*quoting Meece v. Barnhart,* 192 Fed. Appx. 456, 465 (6th Cir. 2006).

Plaintiff points out that the ALJ's written interrogatories did not include any mention of Plaintiff's latest MRI, performed on December 9, 2011.  Therefore, Dr. Kendrick's expert opinion did not take this most recent MRI into account.  Plaintiff then argues that the ALJ personally examined the MRI and, unaided by an expert opinion, made impermissible independent medical findings.

First, it must be noted that Dr. Kendrick could not possibly consider this MRI because it was performed on the same day that he answered the interrogatories.  (Tr. 703-18 and 748).  Dr. Kendrick did consider an MRI performed in early 2011, which noted disc bulging and herniation.  (Tr. 703-18 and 685).  Second, the cited passage, in which Plaintiff argues that the ALJ allegedly substituted his own judgment for that of a medical expert, recites the examining doctor's conclusions almost verbatim.  (Tr. 16-17 and 748).  Therefore, the Court finds that the ALJ was simply considering the latest MRI results in conjunction with all other medical evidence, which is well within his authority.

### III.  CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. # 11) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 12) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 31st day of January, 2014.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\London\13-165 Hibbard MOO.wpd